IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00299-CR

 

Rebecca Ann Shaw,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. F35621

 



Opinion ON REHEARING



 








In her motion for rehearing, Shaw joins the dissent in
contending that we applied the wrong test in determining whether the defensive
issue she argued at trial was raised by the evidence.  She argues that we
should have applied what she refers to as the “raised-by-the-evidence test.”  As
we noted in the original opinion, the “rational-juror test” is the test used to
determine whether, in fact, the defensive issue has been raised by the
evidence.  It is therefore a part of the “raised-by-the-evidence test,” not a
separate test.  We again reject the argument that a defensive issue has been
raised by the evidence even though, presuming the defensive evidence to be
true, no rational juror could find for the defense based upon the evidence
presented.

Shaw urges that we erred in holding that no evidence
was presented from which a rational juror could conclude that shaking the
complainant and causing its head to hit a surface, even a bed, was the result
of emergency medical care administered in good faith and with reasonable care. 
She refers us to evidence that she conducted CPR on the child and that she
followed some instructions from the 911 operator in doing so.  It is undisputed
that Shaw conducted CPR and that she followed some instructions from the 911
operator in doing so.  However, there is no evidence that Shaw’s conduct of the
CPR was reasonable, and there is no evidence that she was ever instructed by
the 911 operator or anyone else to shake the baby and cause its head to hit
against a hard surface or the surface of the bed.

          Shaw suggests that Deputy Thompson,
who was the initial officer at the scene, observed her conducting CPR and that
at no time did he observe that the CPR was not being conducted in good faith
and with reasonable care.  Shaw’s motion contains no record references to any
place in the record where Deputy Thompson observes Shaw shaking the baby and
hitting its head against a hard surface or the bed, and then expresses any
opinion as to whether such conduct of CPR was reasonable.  In fact, Deputy
Thompson never expressed any opinion as to whether Shaw’s conduct of CPR was conducted
with reasonable care.

          Finally, Shaw refers us to testimony
given by the medical examiner when asked what happens when an infant is shaken
and then hits its head on the bed padding.  Among other things, the medical
examiner replied that the only difference between hitting the baby’s head
against a hard surface and a surface such as the bed padding is that there is
“less crushing injury of things outside the skull, so you may not see external
bruising, you may not even see any bleeding under the scalp in the rare
occasional case, but you will see still the accelerational injury with the
brain and all its subdurals and that sort of thing.”  Shaw interprets the
testimony as saying that shaking the baby and hitting its head against an
object, like a bed, could cause the injury sustained by the child in a rare
case.  We interpret the examiner’s testimony as saying that only in a rare case
would one not see any bleeding under the scalp when the baby is shaken and its
head hit against an object.  We believe that a rational jury could not
interpret the testimony in the way Shaw seeks to interpret it.  However, even
if the jury were to reasonably interpret the testimony in the way suggested by
Shaw, it still does not constitute any evidence that Shaw’s shaking the baby
and causing its head to hit an object consisted of emergency medical care
administered in good faith and with reasonable care.             

          Shaw also suggests that we erred in
holding that no rational jury could conclude from the evidence that she was not
licensed in the healing arts.  First, she refers us to section 204.003 of the
Texas Occupation Code, which, among other things, provides that not every
medical assistant or health care worker is required to hold a license as a
physician assistant where one does not act as a physician assistant or
represent to be one.  She refers us to evidence that at trial neither she nor
anyone else referred to her as a physician assistant, and that she signed consent
forms at the hospital in her role as the complainant’s grandmother, not as a
physician assistant.  None of these matters Shaw presents constitutes evidence
from which a rational jury could conclude that she is not licensed, in view of
her testimony that she was licensed.  

          Having shown that she was a licensed
medical assistant, Shaw was obligated to present evidence showing that she was
not licensed in the healing arts.  As noted in the original opinion, she gave a
very broad description of her duties, from which a reasonable juror could
conclude that she was licensed in the healing arts.  It is true that a specific
listing of what she did included tasks that arguably might not include the
healing arts.  However, one need not be licensed to perform those duties. 
Therefore, in view of her testimony that she was licensed, this did not
constitute evidence from which a rational juror could conclude that Shaw was
not licensed in the healing arts.

          In answer to our suggestion that a
jury would be required to resort to speculation in order to find from this
evidence that Shaw was not licensed in the healing arts, Shaw refers us to a
witness who testified that Shaw applied and received food stamps after she had
lost her job.  She also refers us to evidence obtained subsequent to trial from
the internet website of the American Academy of Physician Assistants showing
that the median annual income for a physician assistant in the United States was $67,734.00 in 2001.  Shaw acknowledges that she had previously taken a
voluntary leave of absence from the office of the physician for whom she had
been employed.  Shaw insists that a rational jury could conclude from this
evidence that at the time of the occurrence in question she was an unemployed
“medical assistant” on food stamps.  Even if this is true, it does not
constitute evidence from which a rational jury could conclude that Shaw was not
licensed in the healing arts.  First, there is no evidence that an unemployed
“medical assistant” licensed in the healing arts, including a physician
assistant, could not obtain food stamps if unemployed.  Also, there is no
evidence showing that one is no longer licensed in the healing arts when one
becomes unemployed.  We overrule Shaw’s motion for rehearing.

 

JOHN G. HILL

Senior Justice

 

Before Justice Vance,

Justice
Reyna, and

Senior
Justice Hill (Sitting by Assignment)

(Justice
Vance dissenting)

Rehearing denied

Opinion delivered and
filed December 14, 2005

Publish

[CR25]

      

 






  See id.

Alexander has also advised the Court on numerous
occasions that she is dissatisfied with her appellate counsel and wholly
disagrees with his assertion that her appeal is frivolous.  We construe this as
a claim that Alexander has received ineffective assistance of appellate
counsel.

A similar standard exists for establishing
ineffective assistance of counsel on appeal.  The appellant must show that: (1) counsel’s performance was deficient; and
(2) there is a reasonable probability she “would have prevailed on appeal” but
for counsel’s deficient performance.  Ex parte Santana, 227 S.W.3d 700,
704-05 (Tex. Crim. App. 2007).

Alexander contends that her appellate counsel
advised her from the beginning that her appeal was frivolous, that counsel
“didn’t take into consideration anything on my behalf,” and that counsel
doesn’t know what the appeal is about.  However, Alexander does not specify
what she believes counsel should have done differently in preparing her
appellant’s brief.  And in view of the trial record, we cannot agree that there
is any reasonable probability that she “would have prevailed on appeal” if
counsel had presented some of the issues she discusses in her pro se response. 
See id.

Accordingly, we cannot agree with Alexander’s
complaints regarding the performance of her trial and appellate attorneys.

Conclusion

We affirm the judgment.  Pursuant to Rule of
Appellate Procedure 48.4, counsel must send Alexander a copy of our decision by
certified mail, return receipt requested, at Alexander’s last known address.  Tex. R. App. P. 48.4.  Counsel must
also notify Alexander of her right to file a pro se petition for
discretionary review.[1]  Id.; see also Ex parte Owens, 206 S.W.3d 670, 673-74 (Tex. Crim. App. 2006);
Villanueva, 209 S.W.3d at 249.  Finally, counsel must provide this Court “a
letter certifying his compliance with [Rule 48.4].”  See Tex. R. App. P. 48.4.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray concurs in the judgment to the extent it affirms Alexander’s
conviction.  See Villanueva v. State, 209 S.W.3d 239, 249 (Tex. App.—Waco 2006, no pet.) (Gray, C.J., concurring).  A separate opinion will not
issue.)

Affirmed

Opinion delivered and
filed October 8, 2008

Do not publish

[CR25]

 

 









[1]
              Ordinarily, we would grant
counsel’s motion to withdraw, effective upon counsel’s compliance with Rule
48.4 as evidenced by “a letter [to this Court] certifying his compliance with
this rule.”  See Tex. R. App. P. 48.4;
see also Meza v. State, 206 S.W.3d 684, 689 & n.23 (Tex. Crim. App. 2006);
Villanueva v. State, 209 S.W.3d 239, 249 (Tex. App.—Waco 2006, no pet.). 
Here, however, counsel followed the procedures previously outlined by this
Court in Sowels v. State and filed his motion to withdraw with the trial
court.  See Sowels v. State, 45 S.W.3d 690, 692 (Tex. App.—Waco 2001, no
pet.), overruled in part by Meza, 206 S.W.3d at 689.  The Court of
Criminal Appeals has overruled this aspect of Sowels, and this Court has
“jurisdication and authority to grant a motion to withdraw that accompanies an Anders
brief” if the Court determines that counsel has satisfied his professional
obligations and that the appeal is frivolous.  Meza, 206 S.W.3d at 689.